## Kessler v. Zoning Board of Adjustment

*Smillie, Bean, Davis & Tredinnick,* for appellants.

*E. Menges,* for appellee.

GROSHENS, J., December 29, 1960.—This is an appeal from the refusal of the Zoning Board of Adjustment of Horsham Township to grant a variance permitting the owners of a tract of land to utilize fully an approved and recorded subdivision plan where there had been a change in zoning subsequent to approval and recordation of the plan.

The owners rely principally upon a "vested rights" theory, maintaining that their predecessor in title had obtained a vested interest in the subdivision plan through utilization of it and that they, the owners, had succeeded to this interest.

There is no dispute on the facts. The tract of land here involved was subdivided by the then owner, Henry O. MacCullock, Inc., in a "Plan of Fair Acres," dated August 20, 1954, and approved by the Horsham Township Board of Supervisors on February 15, 1955. In August of 1955, the land was conveyed to Coronet Homes, Inc. The subdivision plan was re-

corded in the Recorder of Deeds' Office at Norristown in Plan Book A-2 page 125, on February 15, 1956. On December 31, 1956, Coronet Homes, Inc., conveyed the land to Conestoga Homes, Inc. The owners acquired title at a public auction on December 2, 1958. At this auction, a plan of subdivision was exhibited which did not reflect approval by the Supervisors of Horsham Township but did show that it was recorded. The owners first inquired as to the requirements of township zoning after settlement.

At the time the subdivision plan was approved and recorded, the land was rezoned "A" residential. This rezoning called for 20,000 square feet of area per lot, a building line width of 100 feet and open front yards of 60 feet.

On April 3, 1956, subsequent to the recording of the plans, the land was rezoned "AA" residential, requiring 35,000 square feet lot area, a width at building line of 140 feet, and a front yard of 80 feet. Where lots are not served by public water and public sewage, the minimum requirement for lot area is one acre, which requirement may be lessened if proof is submitted that a smaller lot area will provide safe and effective sanitary sewage disposal.

By September 12, 1955, building permits were issued for eight lots, all of which fronted on an existing road, Park Road. This preceded the change in zoning.

On May 10, 1957, three building permits were issued for lots abutting an existing street, Davis Grove Road. This was subsequent to the change in zoning. No further building has taken place.

Among the protestants objecting to this subdivision were a number of the owners of the 11 lots built upon. They have had sewage and water problems caused, as the board found, by the condition of the soil, the terrain of the land and the size of the lots on which the individual sewage disposal systems are placed.

Owners' land contained approximately 45 acres, all of which is used for farming except for the 11 lots built upon. There is no question but that they could comply with present zoning requirements.

Owners originally sought a variance claiming that it would be an unnecessary hardship if they were compelled to follow the present zoning requirements inasmuch as they could only divide the tract into 39 lots rather than 71 lots under the recorded plan. The facts fell so far short of proving unnecessary hardship that the owners abandoned this theory of relief and shifted to the theory of "vested rights." We think this bears no more merit.

Owners seek to utilize the recorded plan as a nonconforming use, treating nonconforming status as a vested right. The two cases they rely upon contain the very germ that destroys the body of their argument. In Elkins-Rydal Company v. Brigham, 69 Montg. 185 (1952), this court was emphatic in stating that no vested right existed for an indefinite period to develop the subdivision in accordance with the plan. "To hold otherwise would make it impossible to change or amend any zoning ordinance. Every land owner has a right to utilize his land for the uses permitted by the zoning ordinance in the zone or district in which the land is situated. If these uses cannot be changed or restricted by the legislative branch of local government, then zoning becomes static and unchangeable. This is not the law and would not work for the welfare of the people": pages 194-95.

In Roncase Appeal, 71 Montg. 362 (1955), this court expressly decided that one purchasing a tract of land, for which a subdivision plan was recorded, subsequent to a zoning amendment affecting this tract, does not obtain a vested right to build in accordance with the recorded plan. This is authority for the instant case. The owners were on constructive notice

that the zoning requirements of Horsham Township affected this tract of land, and they are bound by the provisions of the ordinance.

### Order

And now, December 29, 1960, the decision of the Zoning Board of Adjustment of Horsham Township is affirmed.